UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VINCENT CHIARELLI, PHILIP DRAGONETTI,
MICHELE MASZON, TODD MASZON, and
CHRIS SANTIMAURO, individually, and on
behalf of others similarly situated,

               Plaintiffs,

     -against-

NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR CO., LTD.,

             Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-4327 (NGG) (VVP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Vincent Chiarelli, Philip Dragonetti, Michele Maszon, Todd Maszon, and Chris Santimauro bring this putative class action against Defendant Nissan North America, Inc. ("Nissan").[1] In their Amended Complaint, Plaintiffs allege that Nissan installed a defective timing chain system in various models of Nissan vehicles, causing Plaintiffs to pay for repairs after the expiration of their otherwise applicable Nissan warranties. (See generally Am. Compl. (Dkt. 5).) Plaintiffs assert causes of action under the consumer protection laws of New York, New Jersey, Florida, and Maryland; state law causes of action for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and breach of contract; and a federal cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. (Id.) Nissan has moved to dismiss all of the named Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. 14).) For the reasons discussed below, Nissan's motion is GRANTED IN PART and DENIED IN PART.

---

[1] Defendant Nissan Motor Co., Ltd. was previously dismissed from this action. (See Stipulation and Order of Dismissal Without Prejudice of Nissan Motor Co., Ltd. (Dkt. 13).)

## I.    BACKGROUND

### A.    Allegations in the Amended Complaint

The following facts are taken from the Amended Complaint and are assumed as true for the purposes of this motion.

#### 1.    Allegations Relevant to All Plaintiffs

Plaintiffs bring this action on behalf of residents of New York, New Jersey, Florida, and Maryland who are current or former owners or lessees of certain Nissan vehicle models in which Nissan installed an allegedly defective timing chain tensioning system (the "Timing Chain Tensioning System"). (Am. Compl. ¶ 1.) The relevant models are: (1) model year 2004 to 2006 Nissan Altimas with VQ35 engines; (2) all model year 2004 to 2009 Nissan Quests; (3) all model year 2004 to 2008 Nissan Maxmimas; (4) all model year 2005 to 2010 Nissan Frontiers with VQ40 engines; (5) all model year 2005 to 2010 Nissan Xterras; (6) and all model year 2005 to 2010 Nissan Pathfinders (collectively, the "Class Vehicles"). (Id.)

Defendant Nissan designs, manufactures, distributes, sells, and warrants automobiles and other vehicles under several brand names, including the brand names of the Class Vehicles, throughout the United States. (Id. ¶ 36.) Nissan is the warrantor of the Class Vehicles and their various parts and components. (Id. ¶ 37.)

All Class Vehicles contain the Timing Chain Tensioning System. (Id. ¶ 45.) Generally, a vehicle's timing chain system (which includes the Timing Chain Tensioning System) is an integral component of the combustion engine, responsible for connecting the camshaft to the crankshaft, which in turn controls the opening and closing of the engine's valves. (Id. ¶ 46.) The Timing Chain Tensioning System is responsible for ensuring that the engine's valves open and close in a precise, synchronized manner. (Id.) The Timing Chain Tensioning System is designed

2

to function for a time period and overall mileage in excess of those specified in Nissan's warranties. (Id. ¶ 49.) Consumers expect that the Timing Chain Tensioning System will function beyond the time and mileage limits in Nissan's warranties. (Id.)

Plaintiffs sustained damage to their vehicles' transmissions and catalytic converters as a result of the defective Timing Chain Tensioning System. (Id. ¶ 50.) The failure of the Timing Chain Tensioning System also risks occupant safety, as drivers can experience an inability to accelerate, an inability to maintain speed, and catastrophic engine failure, possibly rendering a moving vehicle inoperable, which could lead to a collision.[2] (Id. ¶ 75.)

Nissan maintains full-time personnel at its Tennessee headquarters who analyze field data, evaluate vehicle quality, and integrate feedback from current model quality into new product development. (Id. ¶ 47.) Nissan also maintains a full-time Quality Process Engineer whose responsibilities are: to analyze warranty data to reduce warranty claims "through root cause analysis and countermeasure implementation of assembly and inspection processes"; to engage in the "review and investigat[ion of] warranty concerns through communication with dealers, utilization of warranty claims systems and lease car centers"; to "analyze [the] root cause of warranty concerns using data driven techniques and complete corrective action"; and to "develop and present solutions to field concerns in formal reviews with executive management." (Id.) Through these personnel, Nissan was aware of the defective Timing Chain Tensioning System "for some time," but failed to notify Plaintiffs of the defect during the warranty period, and failed to repair the defect free of charge after the warranty period. (Id. ¶ 48.) Nissan acquired knowledge of the defect through sources not available to Plaintiffs, such as pre-release data testing, knowledge of the materials used for the component parts, early consumer

---

[2] There are no allegations in the Amended Complaint that any of the named Plaintiffs experienced a collision or any personal injuries resulting from a defective Timing Chain Tensioning System.

complaints, testing conducted in response to consumer complaints, warranty and post-warranty claims, replaced part sales data, aggregate warranty data, and other internal sources. (Id. ¶ 51.)

In or around 2006 and 2007, Nissan redesigned and changed the materials and related manufacturing for the primary timing chain guide (slack side), which is one component of the Timing Chain Tensioning System. (Id. ¶ 53.) Before the change, Nissan utilized part number 13091-7Y0000, but after the change, it utilized part number 13091-ZK00A. (Id. ¶ 55.) Nissan did not disclose to the public that it changed the material or part used. (Id.) The new part featured thicker plastic materials, and a more durable "hook" shape to prevent it from breaking, sliding out of place, and/or becoming unseated from the tensioner. (Id. ¶ 56.) Although it made the change in parts in or around 2006 or 2007, Nissan continued to sell vehicles manufactured with the prior Timing Chain Tensioning Systems that were prone to failure. (Id. ¶ 57.)

Beginning in or around July 2007, Nissan issued several Technical Service Bulletins ("TSB") to its dealerships, explaining that the Timing Chain Tensioning Systems needed to be replaced entirely. (Id. ¶ 61.) The first TSB, issued on or around July 17, 2007, described a "buzzing whining noise from [the] timing chain area," and directed technicians to replace both secondary timing chains and both secondary timing chain tensioners in certain Class Vehicles. (Id. ¶ 62.) A second TSB, issued on April 17, 2009, also informed technicians of a buzzing or whining noise, and also applied to certain Class Vehicles. (Id. ¶ 63.) A third TSB, issued on November 16, 2009, applied to certain Class Vehicles and informed technicians of a high frequency buzzing or whining noise coming from the secondary timing chain system, which increased in frequency with engine speed, and indicated that the secondary timing chains and the secondary timing chain tensioner "shoes" were faulty and needed to be replaced. (Id. ¶ 64.) Similar TSBs were issued on December 14, 2009, and May 25, 2010. (Id. ¶¶ 65-66.) Despite

4

these TSBs, Nissan did not inform Class Vehicle owners or lessees of the defect, "making it less likely that they would have the defective components of their Timing Chain Tensioning System replaced prior to the expiration of their warranties." (Id. ¶ 67.) And, in 2009, Nissan even issued a press release representing that certain of the Class Vehicles featured "silent timing chain[s]." (Id. ¶ 68.)

Nissan was also put on actual or constructive notice of the defect as early as October 2006 via consumer complaints made on the website of the National Highway Traffic Safety Administration's Office of Defects Investigation ("ODI"). (Id. ¶ 69; see also id. ¶¶ 71-74.) For example, one complaint dated October 31, 2006, concerning a model year 2004 Nissan Quest (a Class Vehicle), stated that the driver heard "a loud ticking sound when starting up cold," that the driver reported it to Nissan but was told "no it's normal," and that "they [presumably Nissan] are refusing to repair. It is not a normal sound." (Id. ¶ 74.) Similarly, a complaint dated July 22, 2008, concerning a model year 2005 Nissan Pathfinder (a Class Vehicle), stated that "[t]he dealer pointed out that there was a buzzing whining noise coming from one or both secondary timing chains . . . . I had to replace both secondary 12 timing chains and both secondary timing chain tensioners at 61,000 miles. Cost: $2,148. . . . I asked Nissan to cover this item under warranty, which they quickly refused . . . ." (Id.) Additional consumer complaints to the ODI are described in the Amended Complaint. (See id.)

Plaintiffs allege that they were kept ignorant of critical information related to the prosecution of their claims, and that they could not have discovered, through the exercise of reasonable diligence, the true, defective nature of the Timing Chain Tensioning System until shortly before filing suit. (Id. ¶¶ 42, 44.) Plaintiffs further allege that Nissan knowingly and affirmatively concealed the true character, quality, and nature of the Timing Chain Tensioning

System's defect, and that Plaintiffs and absent class members reasonably relied on Nissan's concealment. (Id. ¶ 43; see also id. ¶ 58.) Had buyers and lessees known of the defect, they would have taken steps to avoid the danger and/or paid less for their vehicles than the amounts they actually paid.[3] (Id. ¶ 60.)

### 2. Named Plaintiffs' Specific Allegations

In the Amended Complaint, Plaintiffs make the following allegations with respect to the named Plaintiffs' specific vehicles.

#### a. *Vincent Chiarelli*

In March 2009, Chiarelli, a citizen of New York, purchased in New York a used, model year 2006 Nissan Frontier with a VQ40 engine and 2,095 miles. (Id. ¶¶ 10-11.) At the time of purchase, Nissan represented that the vehicle was in good condition and fit for its intended purpose. (Id. ¶ 12.) The vehicle was serviced timely and properly at all relevant times. (Id. ¶ 13.)

In February 2014, Chiarelli brought his vehicle, now with approximately 87,000 miles, into a Nissan dealership in New York State, which identified a problem with the Timing Chain Tensioning System, and told Plaintiff that he needed to replace it. (Id. ¶ 14.) The dealership told Chiarelli that the repair would cost over $1,000, and that it would not be covered by any warranties, including Chiarelli's extended warranty. (Id. ¶ 15.) Chiarelli paid $1,150 in or about February 2014 to have the system replaced. (Id.) After Chiarelli complained to Nissan, the company agreed to reimburse him for the cost of the parts, but refused to pay for the cost of labor, "which was more than twice the cost of the parts." (Id.)

---

[3] Not relevant for purposes of Nissan's motion to dismiss, Plaintiffs also make allegations in support of their nationwide class and state-specific sub-classes. (See Am. Compl. ¶¶ 77-88.)

b. *Philip Dragonetti*

On June 22, 2007, Dragonetti, a citizen of Florida, purchased in Florida a used, model year 2005 Nissan Xterra with 21,844 miles. (Id. ¶¶ 17-18.) The vehicle was serviced timely and properly at all relevant times. (Id. ¶ 19.)

In or around September 2012, Dragonetti brought his vehicle into a Nissan dealership in Florida for a problem with its battery; upon hearing a noise coming from the timing chain, the dealership identified a problem with the Timing Chain Tensioning System. (Id. ¶ 20.) Plaintiffs do not allege the mileage of the vehicle as of September 2012. The dealership told Dragonetti that he needed to replace the Timing Chain Tensioning System; that other Xterras were experiencing the same problem (there was also a Pathfinder in the shop at the same time being repaired for the same reason); and that Nissan was refusing to pay for the repairs. (Id.) A mechanic at the dealership explained to Dragonetti the cause of the problem, and that the damaged part "is supposed to last the lifetime of the car, that is not a maintenance item, and that it is very hard to change." (Id. ¶ 21.) The mechanic also explained that the damaged part would be replaced by a part made of material that would not fail. (Id.) On September 10, 2012, Dragonetti paid approximately $1,682 for the repairs; in addition, Dragonetti "still has repairs needed of over $2,000 related to catalytic convertor damage which might have been caused by the defective Timing Chain Tensioning system." (Id. ¶ 23.)

c. *Michele and Todd Maszon*

In or about March 2007, the Maszons, citizens of Maryland, purchased in Maryland a model year 2005 Nissan Xterra. (Id. ¶¶ 24-25.) Plaintiffs do not allege the mileage of the vehicle upon the Maszons' purchase or whether it was new. At the time of purchase, Nissan

represented that the vehicle was in good condition and fit for its intended purpose. (Id. ¶ 26.) The vehicle was serviced timely and properly at all relevant times. (Id. ¶ 27.)

In or about June 2014, the Maszons brought their vehicle, now with approximately 97,756 miles, to a Nissan dealership in Maryland, which identified a problem with the vehicle's Timing Chain Tensioning System. (Id. ¶ 28.) The dealership informed the Maszons that they needed to replace the Timing Chain Tensioning System. (Id.) The Maszons paid $1,707 for the repair, which Nissan refused to reimburse. (Id.)

### d.   *Chris Santimauro*

In or about 2007, Chris Santimauro, a citizen of New Jersey, purchased in New Jersey a model year 2007 Nissan Xterra SE. (Id. ¶¶ 30-31.) Plaintiffs do not allege the mileage of the vehicle upon Santimauro's purchase or whether it was new. At the time of purchase, Nissan represented that the vehicle was in good condition and fit for its intended purpose. (Id. ¶ 32.) The vehicle was serviced timely and properly at all relevant times. (Id. ¶ 33.)

At some point thereafter (Santimauro does not allege the date), and when his vehicle had approximately 86,000 miles on it, Santimauro was required to repair and replace its Timing Chain Tensioning System. (Id. ¶ 34.) The cost of the repair was $1,500, which Nissan refused to reimburse. (Id.)

### B.   The Warranties

Plaintiffs did not attach the relevant Nissan warranties to the Amended Complaint, but describe both a Basic Warranty (see id. ¶¶ 127-28), and an additional Powertrain Coverage Warranty (see id. ¶ 128). In connection with its motion to dismiss, Nissan attached the company's New Vehicle Limited Warranty and Powertrain Coverage for model years 2004 through 2010. (See Aff. of David M. Covey, Esq. ("Covey Aff.") in Support of Nissan's Mot. to

Dismiss (Dkt. 14-1), Exs. A-G (Dkt. 14-2 to Dkt. 14-8).) The court may consider these documents in connection with deciding this motion to dismiss as they are integral to the Amended Complaint. See, e.g., Freidman v. Gen. Motors Corp., No. 08-CV-2458 (SAS), 2009 WL 454252, at *2-3 (S.D.N.Y. Feb. 23, 2009) (considering contractual warranties as integral to the complaint in deciding motion to dismiss, and explaining that consideration of such documents submitted by a defendant "is particularly [appropriate] when the plaintiff either had the document in its possession or knew of the document when bringing suit"); AKRO Investicni Spolecnost, A.S. v. A.B. Watley, Inc., No. 01-CV-7693 (LAP), 2003 WL 1108135, at *8 (S.D.N.Y. Mar. 12, 2003) (noting that contract containing warranty clause was integral to the complaint); see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F. 3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (internal quotation marks and citation omitted)).

The New Vehicle Limited Warranty provides basic coverage for 36 months or 36,000 miles, whichever occurs first. (See, e.g., 2004 New Vehicle New Limited Warranty (Covey Aff., Ex. A) at 4; see also Am. Compl. ¶ 128.) Subject to certain exceptions not relevant here, basic coverage "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ." (2004 New Vehicle New Limited Warranty at 4.) Nissan's Powertrain coverage provides coverage for 60 months or 60,000 miles, whichever occurs first. (See, e.g., id.; see also Am. Compl. ¶ 128.) Subject to certain exceptions not relevant here, Powertrain coverage "covers any repairs needed to correct

defects in materials or workmanship." (2004 New Vehicle New Limited Warranty at 4.) Each warranty contains a provision stating that "any implied warranty of merchantability and fitness for a particular purpose shall be limited to the duration of this written warranty." (See, e.g., id.)

## C.    Procedural History

On July 16, 2014, Nissan removed this action from New York Supreme Court, Kings County. (See Not. of Removal (Dkt. 1).) Plaintiffs thereafter filed the Amended Complaint, asserting class action claims on behalf of the five named Plaintiffs. (See Am. Compl.) At a pre-motion conference held on October 23, 2014, the court granted Nissan's request for leave to file a motion to dismiss. (See Oct. 23, 2014, Min. Entry.) Nissan filed its motion to dismiss on October 28, 2014 (Mem. of Law in Support of Def.'s Mot. to Dismiss ("Nissan Mem.") (Dkt. 14-11)); Plaintiffs filed their opposition on December 2, 2014 (Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pls. Mem.") (Dkt. 15)); and Nissan filed its reply on December 18, 2014 (Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("Nissan Reply") (Dkt. 16)).

## II.    LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw a reasonable inference from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

## III. DISCUSSION

Plaintiffs bring claims under the consumer protection laws of New York, New Jersey, Florida, and Maryland, state law causes of action for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and breach of contract, and a federal cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. Nissan argues that Plaintiffs have failed to state any claim as a matter of law.[4] For the reasons discussed below, Nissan's motion is granted in part and denied in part.

### A. Breach of Express Warranty

With respect to express warranty claims, "[t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986).

Faced with such case law, Plaintiffs argue that the time and mileage limitations contained in Nissan's express warranties are unconscionable, and therefore unenforceable. (See Pls. Mem. at 13-18.) In other words, according to Plaintiffs, "[i]t is well recognized that a valid claim for breach of express warranty may be stated for defects discovered after the expiration of

---

[4] Nissan does not specifically address the breach of contract claim. See infra Part III.E.

11

limitations contained in the warranty where, as here, it is sufficiently pled that those limitations are unconscionable and unenforceable because of Defendant's prior knowledge of the defect." (Id. at 13.)

New York's version of the Uniform Commercial Code (which Plaintiffs represent is also representative of the law of the other three states relevant to this action) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.Y. U.C.C. § 2-302(1). On the basis of Nissan's allege knowledge of a latent defect, Plaintiffs ask the court to strike the time and mileage limitations contained in the express warranties.

Courts have routinely rejected express warranty claims premised on the theory Plaintiffs emphasize here. See, e.g., Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) ("Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted."); Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects—defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."); Abraham, 795 F.2d at 250 (rejecting express warranty claim related to defect discovered outside of the time and mileage limitations); Davisson v. Ford Motor Co., No. 13-CV-456 (ALM), 2014 WL 4377792, at *7

(S.D. Ohio Sept. 3, 2014) (collecting cases and rejecting the plaintiffs' argument); Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 518-20 (D.N.J. 2008) (noting that in the Third Circuit, "the general rule . . . is that an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed" (internal quotation marks and citation omitted)).

The case law is clear, moreover, that a defendant's knowledge of a latent defect does not render unconscionable a limitation contained in an express warranty. See, e.g., Alban v. BMW of N. Am., LLC., No. 09-CV-5398 (DRD), 2010 WL 3636253, at *6-9 (D.N.J. Sept. 8, 2010) [Alban I] (explaining that the plaintiff's argument that limitation in express warranty was unconscionable because the manufacturer knew of the alleged defect at the time of purchase "ignores the Second Circuit's holding in Abraham," and explaining that the plaintiff failed to allege how a 48-month limitation was unconscionable). Although the Second Circuit did not expressly address unconscionability in Abraham, it did directly address the flaw in Plaintiffs' reasoning:

> Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

795 F.2d at 250. Accordingly, Plaintiffs' allegation that Nissan's knowledge of the defect renders unenforceable the limitations in the express warranties fails as a matter of law.[5]

---

[5] In their opposition brief, Plaintiffs also argue that they lacked bargaining power, and that there was "a vast disparity" in the level of sophistication between the contracting parties. (See Pls. Mem. at 17.) Plaintiffs, however, make no such allegations in the Amended Complaint. Moreover, it is doubtful such boilerplate assertions would survive a motion to dismiss. Plaintiffs rely primarily on Carlson v. General Motors Corp., 883 F.2d 287, 295-96 (4th Cir. 1989), for its holding that a complaint alleging that a manufacturer's durational limitation on an implied warranty was unconscionable could survive a motion to dismiss where the plaintiff alleged that the manufacturer knew of, but did not disclose, the inherent defects and where the plaintiffs lacked bargaining power. Carlson,

## B.    Breach of Implied Warranty of Merchantability

Next, Plaintiffs allege that Nissan breached the implied warranty of merchantability. As an initial matter, other than in their discussion of privity, the parties do not expressly analyze the claim under the substantive law of each of the four relevant states, but rather engage in a general discussion of the law of the implied warranty of merchantability and the Uniform Commercial Code (focusing, to some extent, on New York and New Jersey law). Thus, the court generally focuses its discussion on the law of these states and the Uniform Commercial Code.

New York's version of the Uniform Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). For a good to be merchantable, it must be, inter alia, "fit for the ordinary purposes for which such goods are used." Id. § 2-314(2)(c). The warranty of fitness for an ordinary purpose "provides for a minimal level of quality," Denny v. Ford Motor Co., 662 N.E.2d 730, 736 n.4 (N.Y. 1995) (internal quotation marks and citation

___

however, is not binding in this circuit, and has been criticized by several district courts in light of the Supreme Court's subsequent decisions in Iqbal and Twombly. See, e.g., Alban v. BMW of N. Am., No. 09-CV-5398 (DRD), 2011 WL 900114, at *9 & n.8 (D.N.J. Mar. 15, 2011) [Alban II] ("However, in light of [Twombly] and Iqbal, the Fourth Circuit's logic is no longer persuasive, as conclusory allegations are insufficient to survive a motion to dismiss."). The Alban litigation is instructive. In Alban I, the district court granted a motion to dismiss and granted plaintiff leave to amend, explaining that, inter alia, the plaintiff failed to make any allegations of unconscionability beyond the defendant's knowledge of the latent defect. 2010 WL 3636253, at *6-9. Attempting to cure the pleading deficiency, the plaintiff filed an amended complaint; in granting the defendant's renewed motion to dismiss, the court explained that even with the added allegations of unequal bargaining power, the "bare-bones allegations that [plaintiff] 'had no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed'" were conclusory in light of federal pleading standards. Alban II, 2011 WL 900114, at *9.

For these same reasons, Plaintiffs' reliance on Szymczak v. Nissan North America, Inc., No. 10-CV-7493 (VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011), is misplaced. There, the district court agreed that allegations that a defendant knew that a part would fail are insufficient to support a claim of unconscionability. Id. at *10. However, because the plaintiffs also alleged that there was a disparity in bargaining power and that they had no meaningful choice about the limitations—and relying at least in part on Carlson—the district court denied the defendant's motion to dismiss the express warranty claim. Id. Here, as discussed above, the only allegations in the Amended Complaint concern Nissan's knowledge of the defect. In any event, even with the actual allegations in Szymczak that there was a disparity in bargaining power, the court views the result in Szymczak as an outlier, and finds Alban I and Alban II to be more persuasive. See, e.g., Majdipour v. Jaguar Land Rover N. Am., LLC, No. 12-CV-7849 (WHW), at *20 (D.N.J. Oct. 9, 2013) (explaining that "the clear weight of authority has rejected" the argument that a plaintiff can adequately allege unconscionability through bare-bone allegations of disparity in bargaining power and lack of meaningful choice).

omitted), and "is a guarantee by the seller that its goods are fit for the intended purpose for which they are used," Wojcik v. Empire Forklift, Inc., 783 N.Y.S.2d 698, 700 (App. Div. 2004) (internal quotation marks and citation omitted).

Here, as alleged by Plaintiffs, the Class Vehicles were each operated for over five years (or more) and for tens of thousands of miles before any issues with the Timing Chain Tensioning System arose. See supra Part I.A.2. As alleged, there simply is no question that the vehicles were fit for their intended purpose for a substantial period of time and use. See, e.g., Szymczak v. Nissan North America, Inc., No. 10-CV-7493 (VB), 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011) ("Courts . . . have consistently held that an automobile that was driven for years without problems was merchantable and fit for its ordinary use at the time of sale."); Sheris v. Nissan N. Am. Inc., No. 07-CV-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) ("'The weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts' where plaintiffs have driven their cars without problems for years." (quoting In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., Nos. 96-CV-3125 (JBS), -1814 (JBS), -3198 (JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997)). (See also Nissan Reply at 9 ("If Plaintiffs prove their allegations at trial, they only prove that they are not entitled to recover for breach of the implied warranty.").)

Moreover, the relevant warranties each limit any implied warranties of merchantability and fitness to the same time and mileage limitations as the express warranties. See supra Part I.B. See also N.Y. U.C.C. § 2-316 (authorizing a seller to exclude or modify the implied warranty of merchantability in writing); Garcia v. Chrysler Grp. LLC, No. 14-CV-8926 (KBF), --- F. Supp. 3d ---, 2015 WL 5123134, at *13-16 (S.D.N.Y. Sept. 1, 2015) (dismissing implied

warranty claims where manufacturer limited implied warranties to the same time and mileage limitations of express warranty, and where defect arose outside of warranty period). The court has already held that Plaintiffs have failed to allege that these limitations are unconscionable. See supra Part III.A. For the same reasons, the limitations to the implied warranties of merchantability and fitness are not unconscionable, and therefore Plaintiffs' claims for defects that arose outside of the warranty period are not actionable.[6] See, e.g., In re Philips/Magnavox Television Litig., No. 09-CV-3072 (PGS), 2010 WL 3522787, at *5-6 (D.N.J. Sept. 1, 2010) (dismissing breach of implied warranty of merchantability claims where plaintiffs failed to allege that time limitations on express warranty claims were unconscionable).

Because the court holds that Plaintiffs have failed to allege a breach of implied warranty of merchantability claim as a matter of law, it does not reach Nissan's alternative arguments that the claim is time-barred, or that a lack of privity between Nissan and the applicable Plaintiffs is fatal to their claims under New York and Florida law.

## C. Magnuson-Moss Warranty Act

The parties agree that Plaintiffs' federal claim under the Magnusson-Moss Warranty Act is derivative of their state law warranty claims, as the federal statute incorporates state law claims of breach of express and implied warranties. (See Nissan Mem. at 16; Pls. Mem. at 26.) See generally Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Magnuson-Moss Act stand or fall with [plaintiff's] express and implied warranty claims under state law."); Cali v. Chrysler Grp. LLC, No. 10-CV-7606 (JSR), 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011) (same), aff'd, 426 F. App'x 38, 38-39 (2d Cir. 2011) (summary order). Accordingly, for the reasons discussed above, see supra Parts III.A-B,

---

[6] Plaintiffs fail to identify any provision of New York, New Jersey, Florida, or Maryland law (or relevant case law) that would narrow Nissan's ability conspicuously to impose time and mileage limitations on implied warranties.

Plaintiffs' claim under the Magnusson-Moss Warranty Act is dismissed. See, e.g., Garcia v. Chrysler Grp. LLC, No. 14-CV-8926 (KBF), --- F. Supp. 3d ---, 2015 WL 5123134, at *16 (S.D.N.Y. Sept. 1, 2015) (dismissing claims under Magnusson-Moss Warranty Act for all plaintiffs who failed adequately to allege breach of express or implied warranties).

### D. Statutory Consumer Protection Claims

Plaintiffs bring claims under New York General Business Law ("GBL") §§ 349 and 350, the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et. seq., and the Maryland Consumer Protection Act ("MCPA"), Md. Com. Law §§ 13-101 et. seq. (See Am. Compl. ¶¶ 89-126.) The court will address each claim in turn, but must first address the applicable pleading standard.[7]

#### 1. The Applicability of Federal Rule of Civil Procedure 9(b)

Whether Rule 9(b) applies to state consumer protection claims asserted in federal court is not a simple question. With respect to the four claims at issue here, courts have reached arguably conflicting holdings on whether a heightened standard applies. For example, because GBL section 349 does not require a plaintiff to plead or prove reliance, the Second Circuit has held that the heightened pleading standard of Rule 9(b) does not apply to it. See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see also City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 455 (2d Cir. 2008), rev'd on other grounds sub nom. Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010). On the other hand, the Third Circuit

---

[7] In moving to dismiss, Nissan makes extensive arguments under the GBL and the NJCFA, but largely omits any independent discussion of Plaintiffs' claims under the FDUTPA and the MCPA. The court appreciates that the parties have focused on the similarities between the four statutory schemes, and the overarching arguments related to each. But, as this case proceeds through discovery and toward summary judgment practice and/or trial, the parties are encouraged also to address any differences between each state's consumer protection law in order to ensure that the court has an adequate legal and factual basis to address what are, notwithstanding any similarities between the statutory schemes, independent state law claims that must be analyzed under each state's governing law.

has held that Rule 9(b) applies to NJCFA claims, see Frederico v. Home Depot, 507

F.3d 188, 203 (3d Cir. 2007), and the Fourth Circuit has held that Rule 9(b) applies to MCPA

claims, see Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013). With

respect to the FDUTPA, it appears that the Eleventh Circuit has not addressed the applicable

federal pleading standard, and district courts within Florida are split on whether Rule 9(b)

applies. See, e.g., Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 1354-55 & n.5

(S.D. Fla. 2012) (acknowledging disagreement and holding that Rule 9(b) does not apply, since

the FDUTPA "was enacted to provide remedies for conduct outside the reach of traditional

common law torts like fraud"); see also Finerman v. Marriott Vacations Worldwide Corp.,

No. 14-CV-1154 (TJC), 2015 WL 5440611, at *2-3 (M.D. Fla. Sept. 15, 2015) (surveying

cases).

 Further complicating matters is the question of whether a district court sitting within the

Second Circuit is bound to follow the holding of another circuit regarding an out-of-circuit state

consumer protection law, or whether the reasoning behind the Second Circuit's holding in

Pelman (that Rule 9(b) does not apply to the GBL) compels a different result. See, e.g., Leonard

v. Abbott Labs., Inc., No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *19-20 (E.D.N.Y.

Mar. 5, 2012) (applying reasoning of Pelman to out-of-circuit state law claims, and explaining

that the court was "not bound by the pleading standard applied by district courts in other states to

that state's law" (emphasis added)); Porter v. Prop. Damage Control Grp., Inc., No. 03-CV-5972

(RJD) (MDG), 2007 WL 2907403, at *2-3 (E.D.N.Y. Sept. 28 2007) (declining to apply

Rule 9(b) to NJCFA claim brought in Eastern District of New York). Indeed, district courts

within circuits that apply Rule 9(b) to consumer protection laws within that circuit also apply

Rule 9(b) to GBL claims, even though the Second Circuit has held that Rule 9(b) does not apply

18

to such claims. See, e.g., Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (acknowledging Pelman, but applying Rule 9(b) to GBL claim based on binding Ninth Circuit precedent).

Still, several district courts within this circuit have simply applied the Third Circuit's holding that Rule 9(b) applies to NJCFA claims without independently determining whether, based on the Second Circuit's analytical framework in Pelman, Rule 9(b) would not apply to NJCFA claims brought in district courts within this circuit. See, e.g., Garcia v. Chrysler Grp. LLC, No. 14-CV-8926 (KBF), --- F. Supp. 3d ---, 2015 WL 5123134, at *16, 21 (S.D.N.Y. Sept. 1, 2015) (noting that Rule 9(b) does not apply to GBL claims, but applying Rule 9(b) to consumer protection statutes of several other states, including the NJCFA, because "[c]ourts have applied Rule 9(b) to claims under almost all of the state consumer protection statutes at issue in [the] action" (citations omitted)); Pullman v. Alpha Media Publ'g, Inc., No. 12-CV-1924 (PAC) (SN), 2013 WL 1286144, at *2 (S.D.N.Y. Mar. 28, 2013) ("To adequately state a claim under the NJCFA, a plaintiff must plead allegations with particularity pursuant to [Rule 9(b)]." (citation omitted)); Ackerman v. Coca-Cola Co., No. 09-CV-395 (JG) (RML), 2010 WL 2925955, at *24 (E.D.N.Y. July 21, 2010) (applying heightened pleading standard to NJCFA claims); cf. Wiseberg v. Toyota Motor Corp., No. 11-CV-3776 (JLL), 2012 WL 1108542, at *5 (D.N.J. Mar. 30, 2012) (applying Rule 9(b) to NJCFA claim and dismissing claim, but applying Second Circuit holding in Pelman to GBL claim and denying motion to dismiss GBL claim).

Under Pelman, it is clear that Rule 9(b) does not apply to Plaintiffs' GBL claim—here, brought within the Second Circuit. As discussed above, whether Rule 9(b) applies to the other three consumer protection claims is more complicated. Nissan appears to acknowledges this lack

of clarity, noting in its opening brief that "[t]he extent to which Federal Rule[] of Civil Procedure 9(b)'s requirement that allegations of fraud be pleaded with particularity applies to claims under the state consumer protection statutes is the subject of some disagreements among the courts." (Nissan Mem. at 18 n.12 (citing split between Second and Third Circuits with respect to GBL and NJCFA claims, but not addressing FDUTPA and MCPA claims).) Without asking the court to apply Rule 9(b), Nissan further argues that "Plaintiffs do not plead a statutory consumer protection claim with sufficient factual averments to satisfy the more liberal requirement of Rule 8 under the law of any of the applicable states."[8] (Id.) Accordingly, because Nissan does not press its potential argument that Rule 9(b) applies to NJCFA, FDUTPA, and MCPA claims brought within the Second Circuit, the court applies Rule 8 to each of the claims.[9] See, e.g., Heil v. LeBow, No. 91-CV-8656 (JFK), 1993 WL 15032, at *2 (S.D.N.Y. Jan. 13, 1993) (explaining that defendant waived Rule 9(b) objection where it filed a Rule 12 motion that failed to include objection on Rule 9(b) grounds), aff'd, 99 F.3d 401 (2d Cir. 1995) (table decision); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1394 (3d ed. 2015).

### 2. New York General Business Law

Section 349(a) of the GBL declares as unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Id.

---

[8] In its reply brief, Nissan appears to walk back from this strategy, arguing for the first time that the NJCFA claim "does not satisfy the specificity requirements of Rule 9(b), which are applicable to the [NJCFA]." (Nissan Reply at 16 (citing Home Depot, 507 F.3d at 200).) Nissan has waived this argument by failing to raise it in its opening brief. In any event, Nissan also ignores the complexity of analysis, discussed supra.

[9] As discussed further below, even under the Rule 8 standard, Plaintiffs' consumer protection claims premised on misrepresentations fail as a matter of law.

§ 350. To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012) (internal quotation marks omitted). "Justifiable reliance by the plaintiff is not an element of" a section 349 claim. Id. at 676. Whether a defendant engaged in a deceptive act or practice (either through misrepresentations or omissions) is governed by "an objective definition . . . limited to those [acts or practices] likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995).

With respect to Plaintiffs' GBL claim, the parties primarily dispute whether Plaintiffs have alleged misrepresentations or omissions that are likely to mislead a reasonable consumer acting reasonably under the circumstances. Although Plaintiffs maintain that they have adequately alleged theories of both omission and misrepresentation (see Pls. Mem. at 30-37 (omissions), 38-41 (misrepresentations)), the gravamen of the Amended Complaint concerns Nissan's alleged material omissions; accordingly, the court turns first to whether Plaintiffs have adequately alleged an omissions-based theory under the GBL.

a. <em>Omissions</em>

An omission may form the basis of a GBL section 349 claim. See, e.g., Bildstein v. MasterCard Int'l, Inc., No. 03-CV-98261 (WHP), 2005 WL 1324972, at *3-4 (S.D.N.Y. June 6, 2005); Oswego, 647 N.E.2d 745. For omissions-based claims, section 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." Oswego, 647 N.E.2d at 745.

"The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Id.

Plaintiffs have adequately alleged an omissions-based theory. In brief, Plaintiffs allege that Nissan failed to disclose information about the latent defect in the Timing Chain Tensioning System, which only Nissan had in its possession and that was relevant to consumers, including Plaintiffs. This is sufficient to survive a motion to dismiss. See, e.g., Garcia, 2015 WL 5123134, at *2, 21 (denying motion to dismiss GBL claim where the plaintiffs alleged that manufacturer knew that vehicle component system was prone to sudden failure and failed to disclose the defect to consumers); Szymczak, 2011 WL 7095432, at *16 (denying motion to dismiss GBL claim where the plaintiffs alleged that manufacturer failed to disclose a defect and that the failure to disclose was likely to mislead a reasonable consumer).

Nissan argues that Plaintiffs have failed to allege that Nissan owed them any legal duty or obligation to disclose the defect. (See Nissan Mem. at 20-24.) But "[t]his argument is unavailing because a business's failure to disclose to consumers material, relevant information the business alone possesses is actionable under [GBL] § 349 without reference to any special relationship between the consumer and the business." Tomassini v. FCA U.S. LLC, No. 14-CV-1226 (MAD) (DEP), 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) (citing Oswego, 647 N.E.2d at 741). In other words, whether there is a legal duty is not the operative focus under the GBL.[10]

Nissan next argues that the terms of the express warranty set the consumer's expectations as a matter of law, and therefore there can be no claim that Nissan's omissions could be viewed

---

[10] It appears that a duty inquiry may be relevant in the context of the consumer protection laws of certain other states that are not at issue here, such as California's. See, e.g., Daughtery v. Am. Honda Motor Co., 51 Cal. Rptr. 3d 118, 126-27 (Cal. Ct. App. 2006) (explaining that under California consumer protection law, "although a claim may be stated . . . in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" (emphasis added)).

as a practice likely to mislead a reasonable consumer acting reasonably under the circumstances. In support of this argument, Nissan cites Against Gravity Apparel, Inc. v. Quarterdeck Corp., 267 N.Y.S.2d 368, 369 (App. Div. 1999), in which the First Department held, inter alia, that because an express, 90-day warranty covered a software program for which a latent defect arose over two years after purchase, the plaintiff could not assert that the defendant made a materially misleading or deceptive omission at the time of the sale by not disclosing the defect. Courts addressing omissions-based GBL claims against vehicle manufacturers, such as the one Plaintiffs assert here, have rejected this argument. For example, in In re Porsche Cars North America, Inc., 880 F. Supp. 2d 801, 861 (S.D. Ohio 2012), the district court explained that the Quarterdeck opinion did not cite or address the Court of Appeals's holding in Oswego, and that it was therefore questionable whether it was an accurate statement of New York State law. See also In re OnStar Contract Litig., 600 F. Supp. 2d 861, 870 (E.D. Mich. 2009) (denying motion to dismiss GBL claim premised on the seller omitting to mention a known risk of eventual product failure beyond the warranty period); cf. Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 546 (D. Md. 2011) (rejecting the defendant's argument that claim should be dismissed because "a warranty is an express acknowledgement of potential defects in the vehicles," and therefore the defendant "did not mislead their customers since it already disclosed this information"). The court agrees with these precedents; absent further guidance from the New York Court of Appeals, the general omissions framework contained in Oswego controls, and Quarterdeck does not stand for the broad proposition for which Nissan cites it.

It may be that as a factual matter, Plaintiffs cannot ultimately raise a genuine issue of material fact or prove at trial that a reasonable consumer faced with a limited, express warranty would be misled by a manufacturer's failure to disclose that certain vehicle parts were likely to

fail outside of the warranty period. But Nissan's argument in moving to dismiss—that "[u]nder the facts, no reasonable consumer would expect that the vehicle [he purchased] was completely free of defects or that it would not require repairs at the owner's expense following the expiration of the warranty" (Nissan Mem. at 21)—is both premature at the pleading stage, where Plaintiffs' allegations to the contrary must be taken as true (see, e.g., Am. Compl. ¶ 49), and ignores Plaintiffs' articulated theory that Nissan knew of the alleged latent defect, but failed to disclose it.

> b. *Misrepresentations*

Unlike Plaintiffs' omissions-based theory, their GBL claim based on misrepresentations is inadequately alleged as a matter of law.[11] However, because Plaintiffs may be able to cure the pleading deficiency through amendment, the court grants Plaintiffs leave to further amend the Amended Complaint with respect to the GBL misrepresentation claim.[12]

Plaintiffs support their misrepresentation claim with the following allegations:

- Defendants actively and knowingly misrepresented to Plaintiff and the New York Class members at the time of purchase or lease that the Class Vehicles, including the Timing Chain Tensioning System, that said Class Vehicles [sic], did not contain a material defect, were in good working order, not defective and merchantable. (Am. Compl. ¶ 91(a).)

---

[11] In the Amended Complaint, Plaintiffs also cite GBL section 350, which declares unlawful false advertising. Plaintiffs' allegations, however, do not describe any Nissan advertisements in any way, and the GBL claim premised on false advertisements therefore fails as a matter of law, and is dismissed. See, e.g., Szymczak, 2011 WL 7095432, at *15 (dismissing section 350 claim where plaintiffs failed to identify any false or misleading advertisements in the complaint).

[12] Plaintiffs specifically requested leave to amend their GBL misrepresentation claim (see Pls. Opp'n at 41), and Nissan did not respond to Plaintiffs' request in its brief in reply. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court finds that it is appropriate for Plaintiffs to have an opportunity to cure the pleading deficiency, as amendment may not be futile. See generally Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

- Defendants also marketed these vehicles as being of superior quality when the Class Vehicles contained a known defect.[13] (Id. ¶¶ 104, 113, 121.)

These conclusory allegations, without more, are insufficient to state a claim as a matter of law; indeed, several district courts have granted motions to dismiss GBL claims based on affirmative misrepresentations while denying motions to dismiss claims based on omissions. See, e.g., Wiseberg, 2012 WL 1108542, at *5-6 (denying motion to dismiss omissions-based theory, since the plaintiff "allege[d] that Toyota [] knew about the defect at the time of purchase, . . . but actively concealed and failed to disclose this fact," but granting motion to dismiss misrepresentations-based theory where the plaintiff alleged that manufacturer represented that car was in good condition and fit for its intended purpose); Woods v. Maytag Co., 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011) (granting motion to dismiss misrepresentations-based theory, since "general references to advertisements and statements will not be sufficient to allege a deceptive act or practice," but denying motion to dismiss omissions-based theory, since the plaintiff "plausibly alleged that the [] Defendants had knowledge of the purported defect and failed to disclose that information"); In re Porsche, 880 F. Supp. 2d at 859-63 (denying motion to dismiss GBL claim related to the defendant's failure to disclose material information concerning the defective nature of a cooling system, but granting motion to dismiss claims related to affirmative misrepresentations about the vehicles).

The court recognizes that at least one district court within the Second Circuit has denied a motion to dismiss a misrepresentations-based theory premised on allegations similar to those made by Plaintiffs here. See Szymczak, 2011 WL 7095432, at *15-16 (crediting allegations that the defendants "actively and knowingly misrepresented to Plaintiffs and the Class Members at

---

[13] Plaintiffs make this identical allegation with respect to New Jersey, Florida, and Maryland purchasers, but do not make the allegation with respect to New York purchasers. The court does not consider this allegation with respect to its analysis under New York law.

the time of purchase or lease that the Class Vehicles, including the radiator and transmission system design of said Vehicles, did not contain a material defect, were in good working order, not defective and merchantable . . . ."). Szymczak focused on the fact that the allegations, "when read in light of the entire amended complaint, . . . include[d] sufficient detail and a plausible narrative for how defendants knew of the radiator defect." Id. at *16. In light of the other cases described above, the court views Szymczak's holding with respect to the misrepresentations-based theory—at least when alleged in such a conclusory manner—as an outlier.[14]

3. New Jersey Consumer Fraud Act

The NJCFA authorizes "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act" to bring a private action. N.J. Stat. Ann. § 56:8-19. Accordingly, "[t]o state a prima facie case under the [NJCFA], a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Mickens v. Ford Motor Co., 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (internal quotation marks and citations omitted). The NJCFA declares as unlawful conduct "any unconscionable commercial practice, deception, fraud, false pretense, false

---

[14] Plaintiffs also rely in part on Falco v. Nissan North America, No. 13-CV-686 (DDP), 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013), a class action against Nissan and Nissan Motor Co. in connection with the same Timing Control Tensioning System at issue in this litigation. In Falco, the plaintiffs have brought claims under the California Consumer Legal Remedies Act (a consumer protection statute), the Song-Beverly Consumer Warranty Act (a California statute creating an implied warranty of merchantability), the California Unfair Competition Law, the Washington Consumer Protection Act, and common law claims of fraud and unjust enrichment. Id. at *1-12. As here, the plaintiffs in Falco have alleged that Nissan knew of the defective Timing Control Tensioning System as early as 2006 or 2007, consumers complained to the National Highway Traffic Administration as early as 2006, and repairs of the plaintiffs' vehicles occurred outside of the 60,000 mile/five year express warranty. Id. at *1-2. In 2013, the district court largely denied the defendants' motion to dismiss, allowing all causes of action except the unjust enrichment claim under California law to proceed. See id. at *12. Because the decision is grounded in California and Washington law—which appear to differ in significant ways from the consumer protection laws at issue here—it has no direct application to this action, notwithstanding the significant similarities between the allegations in the two cases and the fact that both sets of plaintiffs bring statutory consumer protection claims.

26

promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2. From this definition, "courts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." Mickens, 900 F. Supp. 2d at 436 (citation omitted). Unlike for affirmative acts or regulatory violations, "[t]o commit an unlawful omission, . . . [the] defendant must act with knowledge, and intent is an essential element." Id. (citations omitted).

Courts are split on whether Plaintiffs' theory—that Nissan knew of a latent defect that would not be covered by its express and implied warranties, and failed to disclose that defect to car owners—is cognizable under the NJCFA. In Perkins v. DaimlerChrysler Corp., 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006), an intermediate New Jersey appellate court upheld a trial court's dismissal of a NJCFA claim as a matter of law for failure to allege an ascertainable loss, and explained that "the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA." The court further explained that "[t]o interpret the [NJ]CFA . . . to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period." Id. at 1005. Notably, the plaintiff in Perkins filed her complaint before the part actually failed; thus, the plaintiff did "not allege[] that the exhaust manifold . . . actually required repair or replacement." Id. at 1004. The plaintiff also did not "allege[] that the deterioration or failure of such [the relevant] part represented a danger to others." Id.

Several courts have cited <u>Perkins</u> approvingly in dismissing NJCFA claims similar to Plaintiffs' claim here. <u>See, e.g.</u> <u>Velasco v. Chrysler Grp. LLC</u>, No. 13-CV-8080 (DDP) (VBK), 2014 WL 4187796, at *11-12 (C.D. Cal. Aug. 22, 2014) (dismissing NJCFA claim and stating that even if a safety exception exists to the holding in <u>Perkins</u>, the plaintiff failed to allege an actual safety issue); <u>Grodzitsky v. Am. Honda Motor Co.</u>, No. 12-CV-1142 (SVW) (PLA), 2013 WL 2631326, at *9 (C.D. Cal. June 12, 2013) ("Plaintiffs do not, and cannot, allege that the Window Regulator Defect occurred during the warranty period; thus, they cannot state a claim under New Jersey's CFA."); <u>Szymczak</u>, 2011 WL 7095432, at *17 (dismissing NJCFA claim where the plaintiffs alleged latent defect and where, although plaintiffs also alleged a safety concern, they failed plausibly to allege that the defendant purposefully limited the period of the express warranty or that the warranty period was unreasonably short); <u>Glass v. BMW of N. Am., LLC</u>, No. 10-CV-5259 (ES), 2011 WL 6887721, at *10 (D.N.J. Dec. 29, 2011) (dismissing complaint where the plaintiff did not allege that the defendant "kn[ew] with certainty that its product would fail" and where the purported defect manifested after the expiration of an express warranty); <u>Nobile v. Ford Motor Co.</u>, No. 10-CV-1890 (PGS), 2011 WL 900119, at *6 (D.N.J. Mar. 14, 2011) (dismissing NJCFA claim because the plaintiffs alleged that defective part outperformed express warranty, notwithstanding the plaintiffs' additional allegations of safety concerns and the defendant's concealment of the defect); <u>Noble v. Porsche Cars N. Am., Inc.</u>, 694 F. Supp. 2d 333, 337-39 (D.N.J. 2010) (dismissing NJCFA claim and extending rationale of <u>Perkins</u> even where the plaintiff alleged safety concerns); <u>Alban I</u>, 2010 WL 3636253, at *10-11 (dismissing NJCFA claim for failure to comply with Rule 9(b) where the plaintiff failed adequately to allege that the defendant knew of latent defect); <u>see also</u>

Garcia, 2015 WL 5123134, at *20 (without citing Perkins, dismissing NJCFA claim where the plaintiff only alleged that latent defect arose outside of warranty period).

Other courts have read Perkins narrowly. For example, in Maniscalco v. Brother International Corp. (USA), 627 F. Supp. 2d 494, 501-02 (D.N.J. 2009), the court characterized Perkins as "stand[ing] for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the [NJ]CFA," and denied a motion to dismiss where the plaintiffs alleged that the manufacturer knew of the defect, that the relevant product should last beyond the term of the relevant warranty, and that the product did, in fact, suffer from the defect. Similarly, in Doll, 814 F. Supp. 2d at 546-47, the court, applying the consumer protection statutes of several states (but not the NJCFA), distinguished Perkins because the plaintiff in Perkins did not allege that the car manufacturer knew of the defect, did not allege that the part actually failed, and did not allege any safety concerns. See also Perkins, 890 A.2d at 1004 ("[W]e nevertheless affirm the dismissal of the complaint because we agree in principle with the trial judge's determination that—absent those circumstances in which safety concerns might be implicated, as to which we offer no view—the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA." (emphasis added)). Additional courts have distinguished Perkins on similar grounds. See, e.g., In re Ford Motor Co., Spark Plug & 3-Valve Engine Prods. Liab. Litig., No. 12-MD-2316 (BYP), 2014 WL 3778592, at *26-28 (N.D. Ohio July 30, 2014) (distinguishing Perkins and allowing NJCFA claim to go to trial); Mickens, 900 F. Supp. 2d at 444-45 (denying motion to dismiss NJCFA claim and distinguishing Perkins); Nelson v. Nissan N. Am., Inc., 894 F. Supp. 2d 558, 568-69 (D.N.J. 2012) (denying motion to dismiss

where the plaintiff alleged that the defective part created a danger, rendering <u>Perkins</u> inapplicable). In distinguishing <u>Perkins</u>, courts often note that "[i]n New Jersey, broad [NJ]CFA protection was envisioned by the legislature and has been recognized by the Supreme Court of New Jersey." <u>Maniscalco</u>, 627 F. Supp. 2d at 502 (footnote omitted).

Whether Plaintiffs' NJCFA claim is cognizable depends on the breadth of the <u>Perkins</u> decision. It is clear that a plaintiff asserting a claim under the NJCFA cannot allege an ascertainable loss during the warranty period, since it would be incumbent on the defendant to repair the covered defect during that period. <u>Perkins</u>, 890 A.D.3d at 1004; <u>see also</u> <u>Thiedemann v. Mercedes-Benz USA, LLC.</u>, 872 A.2d 783, 794-95 (N.J. 2005) (holding that the plaintiffs failed to allege ascertainable loss under the NJCFA where repairs were made by the defendant during the warranty period without cost to the plaintiffs). But the <u>Perkins</u> court spoke more broadly in explaining that "[t]o interpret the [NJ]CFA . . . to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period." <u>Id.</u> at 1005; <u>see also</u> <u>id.</u> at 1004-05 ("[P]laintiff may not maintain a [NJ]CFA claim—and pursue treble damages, attorneys' fees and costs of suit—when the allegedly substandard part continues to perform beyond defendant's contractual obligation to repair or replace it. Otherwise, plaintiff's right to relief from the defendant would actually, and illogically, increase the longer the vehicle and its component parts perform."). Nissan (and several courts cited above) have interpreted this language to mean that even where a plaintiff must pay to repair a latent defect outside of the warranty period (i.e., an out-of-pocket expense), the plaintiff cannot allege either an unlawful practice (since, through a warranty, the defendant

expressly represented that part could fail outside of the warranty period), or an ascertainable loss (since a consumer expects to pay out-of-pocket for post-warranty repairs).

The court has performed a careful review of Perkins and the relevant case law, and concludes that Perkins compels the dismissal of Plaintiffs' claims here. In brief, the court agrees with the analysis in In re Porsche, 880 F. Supp. 2d at 857-58, which held the following: (1) under Perkins, a plaintiff cannot allege ascertainable loss where the allegedly defective part outperforms its warranty period; (2) an allegation that a defendant concealed or knew about a latent defect may go toward whether the defendant engaged in an unlawful act (i.e., a materially misleading omission), but does not affect whether the plaintiff has adequately alleged an ascertainable loss; and (3) although Perkins "offered no view" regarding whether there is an exception where the alleged defect presents a safety concern to purchasers or others, there is no basis in Perkins or other New Jersey case law for a federal court to graft such an exception onto the NJCFA.[15]

The court recognizes that certain other district courts have limited Perkins where the plaintiff alleged that the defendant knew about or concealed a defect, or that a defective part presented a safety concern. However, just as many district courts (if not more) have declined to limit Perkins in these circumstances. Accordingly, based on the discussion in Perkins concerning the NJCFA's "ascertainable loss" element, the court finds that dismissal of the NJCFA claim for failure to state a claim is warranted, even though, as discussed above, Plaintiffs

---

[15] Even assuming a safety exception does apply, the New Jersey Plaintiff (Santimauro) has failed adequately to allege that he experienced any actual safety issue, or facts suggesting a genuine risk of danger. (See Am. Compl. ¶¶ 30-35 (alleging that Santimauro was required to make repairs when the Timing Chain Tensioning System "exhibited the signature problems of the defect," but not alleging any experience of actual danger).) See also, e.g. Velasco, 2014 WL 4187796, at *12 (holding that safety exception does not apply under Perkins, but assuming it does, finding that the plaintiff failed adequately to allege any safety issues).

have adequately alleged a GBL claim under New York law.[16] See, e.g., In re Porsche, 880

F. Supp. 2d at 857-63 (granting motion to dismiss NJCFA claim, but denying motion to dismiss

GBL, FDUTPA, and MCPA claims); Wiseberg, 2012 WL 1108542, at *4-6 (granting motion to

dismiss NJCFA claim, but denying motion to dismiss GBL claim); Szymczak, 2011

WL 7095432, at *16-17 (same).

### 4. Florida Deceptive and Unfair Trade Practices Act

The FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts

or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Fla. Stat. § 501.204(1). "To state a FDUTPA claim, a plaintiff must allege: (1) a deceptive act or

unfair practice; (2) causation; and (3) actual damages." Herrera v. JFK Med. Ctr. Ltd. P'ship,

No. 14-CV-2327 (TBM), --- F. Supp. 3d ---, 2015 WL 730039, at *5 (M.D. Fla. Feb. 20, 2015)

(internal quotation marks and citation omitted). "The Florida Supreme Court has noted that

deception occurs if there is a representation, omission, or practice that is likely to mislead the

consumer acting reasonably in the circumstances, to the consumer's detriment." Id. (internal

quotation marks and citations omitted). "An unfair practice is one that offends established public

policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers." Id. (internal quotation marks and citations omitted).

For the reasons discussed above with respect to Plaintiffs' omissions-based GBL theory,

and in line with several cases denying motions to dismiss FDUTPA claims premised on a

manufacturer's failure to disclose a known, latent defect, Plaintiffs have adequately alleged an

---

[16] Like their misrepresentations-based theory under the GBL, Plaintiffs' misrepresentations-based theory under the NJCFA is also dismissed for failure to allege an unlawful misrepresentation. The sole allegations made by Plaintiffs of an affirmative misrepresentation with respect to New Jersey purchasers are the conclusory allegation that Nissan represented that the Class Vehicles were of "superior quality" (Am. Compl. ¶ 121), and that Santimauro's vehicle was in good condition and fit for its intended purpose (id. ¶ 32). However, unlike for their GBL claim, Plaintiffs are not granted leave to amend the NJCFA claim, since the court's holding under Perkins renders amendment futile.

omissions-based theory under the FDUTPA.[17] See, e.g., Velasco, 2014 WL 4187796, at *7-8 (denying motion to dismiss FDUTPA claim premised on manufacturer's failure to disclose defective electronic control system); In re Porsche, 880 F. Supp. 2d at 840-42 (denying motion to dismiss FDUTPA claim premised on failure to disclose latent defect); Matthews v. Am. Honda Motor Co., No. 12-CV-60630 (KMW), 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value." (citation omitted)); Doll, 814 F. Supp. 2d at 547-48 (denying motion to dismiss FDUTPA claim where the plaintiff alleged that manufacturer knew or should have known of the alleged defect); see generally Collins v. DaimlerChrysler Corp., 894 S.2d 988 (Fla. Dist. Ct. App. 2004).

### 5. Maryland Consumer Protection Act

The MCPA prohibits, inter alia, any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," and any "[f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Com. Law § 13-101(1), (3). Only material misrepresentations or omissions are actionable. See Green v. H&R Block, Inc., 735 A.2d 1039, 1058 (Md. 1999). "An omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action." Id. at 1059. "Ordinarily the question of materiality should not be treated as a matter of law." Id. A party bringing a claim under the MCPA must also establish "actual injury or loss," in other words, "the consumer must have suffered an identifiable loss, measured by the amount

---

[17] Plaintiffs' misrepresentations-based theory under the FDUTPA, however, is dismissed for failure to state a claim, with leave to amend. The sole allegation made by Plaintiffs of an affirmative misrepresentation with respect to Florida purchasers is the conclusory allegation that Nissan represented that the Class Vehicles were of "superior quality." (Am. Compl. ¶ 104.)

the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation [or omission]." Lloyd v. Gen. Motors Corp., 916 A.2d 257, 277 (Md. 2007) (internal quotation marks and citations omitted).

For the reasons discussed above with respect to Plaintiffs' omissions-based GBL and FDUTPA claims, and based on the Court of Appeals of Maryland's guidance in Lloyd,[18] and several cases denying motions to dismiss MCPA claims premised on a manufacturer's failure to disclose a known, latent defect, Plaintiffs have adequately alleged an omissions-based theory under the MCPA.[19] See, e.g., Velasco, 2014 WL 4187796, at *6, 10 (denying motion to dismiss MCPA claim premised on manufacturer's failure to disclose defective electronic control system); Doll, 814 F. Supp. 2d at 548 (denying motion to dismiss MCPA claim where the plaintiff alleged that manufacturer knew or should have known of the alleged defect).

### E.     Breach of Contract

In its memoranda of law, Nissan did not specifically address Plaintiffs' separate breach of contract claim. (See Am. Compl. ¶¶ 149-153.) Although it appears that the claim may be duplicative of Plaintiffs' warranty claims, which the court has dismissed in this Memorandum and Order, Plaintiffs also appear to allege a violation of the implied covenant of good faith and fair dealing. The court declines to determine the legal sufficiency of this claim absent a formal motion and briefing by Nissan.

---

[18] The court notes that it appears that the MCPA differs significantly from the NJCFA with respect to allegations of loss. In Lloyd, for example, the Court of Appeals of Maryland held that the plaintiffs sufficiently alleged an actual loss by pleading that their vehicles' seatbacks were defective and that they would be forced to pay for the future cost of the repair. 916 A.2d at 281.

[19] Plaintiffs' misrepresentations-based theory under the MCPA, however, is dismissed for failure to state a claim, with leave to amend. The sole allegations made by Plaintiffs of an affirmative misrepresentation with respect to Maryland purchasers are the conclusory allegation that Nissan represented that the Class Vehicles were of "superior quality" (Am. Compl. ¶ 113), and the allegation that the Maszons' vehicle was in good condition and fit for its intended purpose (id. ¶ 26).

## F. Unjust Enrichment

Finally, Plaintiffs allege that Nissan was unjustly enriched at the expense of consumers. For the reasons discussed below, Plaintiffs' unjust enrichment claim fails under the laws of each of the four relevant states.

Under New York law, "[w]here a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment." Statler v. Dell, Inc., 775 F. Supp. 2d 474, 485 (E.D.N.Y. 2011). In Dell, for example, the court dismissed the plaintiff's unjust enrichment claim, since the goods at issue were covered by a warranty contained in a contract between the plaintiff and the defendant. Id.; see also, e.g., Haag v. Hyundai Motor Am., 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (dismissing unjust enrichment claim where plaintiff alleged a breach of express warranty claim under the manufacturer's written warranty); In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 863 (S.D. Ohio 2012) ("Courts interpreting New York state law have found that, in cases involving allegedly defective products, express warranties cover the subject matter at issue and an unjust enrichment claim does not lie." (citations omitted)). Plaintiffs are correct that the Federal Rules of Civil Procedure generally authorize them to plead in the alternative, see, e.g., Maalouf v. Salomon Smith Barney, Inc., No. 02-CV-4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2013) (denying motion to dismiss unjust enrichment claim where, in defense of parallel breach of contract claim, defendant argued that relevant contract had terminated); here, however, the parties agree that the express warranty governed (even if, as Plaintiffs unsuccessfully argue, the time and mileage limitations are unconscionable), and Plaintiffs have failed to allege that the contract in dispute is invalid, see, e.g., Dabrowski v. Abax Inc., 882 N.Y.S.2d 119, 120-21 (App. Div. 2009) ("The quantum meruit and unjust enrichment causes of

action also should have been dismissed because they arise out of subject matter covered by express contracts and the validity of the contracts are not in dispute.").

This limitation also applies under Maryland, Florida, and New Jersey law. See, e.g., Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 610 (Md. 2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."); Severn Mktg. Assocs., Inc. v. Doolin, No. 09-CV-3295 (CCB), 2010 WL 3834994, at *10 (D. Md. Sept. 29, 2010) (dismissing unjust enrichment claim under Maryland law where parties agreed that "at least part of the [relevant employment] agreement is valid and enforceable"); David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1324-25 (S.D. Fla. 2009) (explaining that "a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract" and dismissing unjust enrichment claim under Florida law where plaintiff alleged that manufacturer breached the express warranty); Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. Dist. Ct. App. 2013) ("[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment."); Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983) (explaining that under New Jersey law, "[q]uasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter" and that "there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties"); Premier Pork L.L.C. v. Westin, Inc., No. 07-CV-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) ("Although litigants may plead alternative and inconsistent claims, courts have on numerous occasions dismissed under

Rule 12(b)(6) unjust enrichment claims [under New Jersey law] that relate to the same subject matter as valid contracts." (citation omitted)).[20]

## IV.  CONCLUSION

For the foregoing reasons, Nissan's motion to dismiss is GRANTED IN PART and DENIED IN PART.  All claims asserted in the Amended Complaint are dismissed except Plaintiffs' omissions-based theory under the GBL, the FDUTPA, and the MCPA, and Plaintiffs' breach of contract claim.

Plaintiffs are directed to file a letter within fourteen (14) days of the date of entry of this Memorandum and Order, setting forth whether they (a) intend to amend only their misrepresentations-based theory under the GBL, the FDUTPA, and the MCPA, see supra nn.12, 17, 19; (b) intend to amend their misrepresentations-based theory under the GBL, the FDUTPA, and the MCPA, and also seek leave to file a motion for leave to amend any other claims dismissed in this Memorandum and Order for which the court has not granted leave to amend; or (c) do not intend to file a further amended complaint.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September 25, 2015

NICHOLAS G. GARAUFIS
United States District Judge

---

[20]  In addition, under New Jersey law, a lack of privity between the plaintiff and the defendant precludes an unjust enrichment claim.  See, e.g., Cooper v. Samsung Elecs. Am., Inc., No. 07-CV-3853 (JLL), 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (dismissing unjust enrichment claim where the plaintiff purchased product from retailer and not from manufacturer), aff'd, 374 F. App'x 250 (3d Cir. 2011) (unpublished decision); see generally Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 335 (N.J. 1966) ("It is further noted that quasi-contract cases involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit.").  Here, the New Jersey Plaintiff (Santimauro) does not allege that he purchased his used car directly from Nissan (see Am. Compl. ¶¶ 30-35); his unjust enrichment claim against Nissan therefore fails as a matter of law.